UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

——————————————————————

IBRAHIM BEKTESEVIC,

    Plaintiffs,

-against-

COLUMBIA SOUTH L.L.C. et al,

    Defendant.

——————————————————————x

No. 14-cv-139 (CM)

## DECISION AND ORDER APPROVING FLSA SETTLEMENT

McMahon, C.J.:

In this action for unpaid wages under state and federal law, the parties have requested this court's approval of an agreed-upon settlement agreement. For the reasons that follow, the settlement agreement is approved.

## BACKGROUND

On January 9, 2014, Ibrahim Bektesevic ("Plaintiff") filed a complaint against several defendants for unpaid wages under federal and state law. *See* 29 U.S.C. § 201 *et seq.* (the Fair Labor Standards Act, or "FLSA"), New York Labor Law ("NYLL"), Art. 19 § 650 *et seq.*; 12 N.Y. Comp. Codes R. & Regs. tit. 12, § 141 *et seq.* Following separate settlement agreements, Plaintiff has voluntarily dismissed his claims against all but one defendant, Bluestar Properties, Inc. ("Bluestar"). *See* Dkt. No. 11 (Stipulation and Order of Voluntary Dismissal Pursuant to F.R.C.P. 41 as to defendants Columbia South LLC; COSO 165-171 Manhattan, LLC; COSO 15 West 107 LLC; Kenneth Friedman; and Harry Tawil); Dkt. No. 20 (Stipulation and Order of Voluntary Dismissal Pursuant to F.R.C.P. 41 as to defendants Gemstone Realty Partners, LLC and Michael Aryeh); Dkt. No. 29 (Stipulation and Order of Voluntary Dismissal Pursuant to F.R.C.P. 41 as to

defendants Jeffrey Pikus and John Does #1-50). Bluestar is a corporation that owns and operates a number of residential buildings in the New York City metropolitan area, including two residential buildings – located at 165-71 Manhattan Avenue and 15 West 107th Street (jointly referred to as "the Premises") – where Plaintiff previously worked as either a janitor or a building superintendent. Dkt. No. 1, at 1. Bluestar owned the Premises for approximately one of the nearly seven years that Plaintiff worked on the Premises. Dkt. No. 1, at 4-6.

Defendant not having answered the complaint, and the time for answering the complaint having expired, Plaintiff moved for default judgment against Bluestar on January 20, 2015. Dkt. No. 21. In his motion, Plaintiff claimed that Bluestar owed him one hundred thirty-three thousand seven hundred dollars ($133,700.00) for unpaid overtime wages, damages pursuant to the FLSA and NYLL, and penalties for notice and recordkeeping violations. Dkt. No. 21, at 3. Plaintiff also stated that he was entitled to recover three thousand eighty-six dollars and eighty-eight cents ($3,086.88) in attorney's fees. Dkt. No. 21, at 4. Plaintiff attached Exhibits E and F in support of these estimations. *See* Dkt. No. 21, Ex. E (damage calculations); Dkt. No. 21, Ex. F (rates, hours, and total billing for attorney's fees). On April 29, 2015, the court entered default judgment against Bluestar for failing to answer or otherwise respond to Plaintiff's complaint. Dkt. No. 27.

On August 10, 2016, at the parties' joint request, the court vacated the default judgment to permit judicial review of an agreed-upon settlement. *See* Dkt. No. 30, at 1; Dkt. No. 31. The parties now ask the court to approve the settlement agreement.

*The Proposed Settlement*

Under the terms of the proposed settlement, Defendant would be obligated to pay Plaintiff a gross settlement sum of ten thousand dollars ($10,000). Dkt. No. 30, Ex. 1, at 3. Plaintiff's

counsel would receive one-third of this sum ($3,333.00), with the balance going to Plaintiff ($6,667.00). Dkt. No. 30, Ex. 1, at 3.

Other terms include a general release, a covenant not to sue, and a non-disparagement agreement. Dkt. No. 30, Ex. 1, at 2–4. Under the general release provisions, Plaintiff would "unconditionally and irrevocably" discharge all current and future claims against Bluestar, "their respective past and present successors, assigns, affiliated entities, and their respective past and present owners, directors, officers, agents, managers, employees, insurers, and attorneys." Dkt. No. 30, Ex. 1, at 2. The release provisions extend to "any and all actions . . . or damages arising from or relating to anything that happened before Plaintiff signs [the] agreement." Dkt. No. 30, Ex. 1, at 2.

The agreement contains confidentiality provisions in both its covenant not to sue and non-disparagement clause. As part of his agreement not to sue, Plaintiff would agree not to disclose the fact of the agreement, its terms, or the substance of any pre-agreement communications to anyone other than his "immediate family and legal and accounting advisors." Dkt. No. 30, Ex. 1, at 3. He would also agree not to bring "any judicial or administrative proceeding concerning any Claim against Defendant," nor "encourage . . . or participate in any way the filing, reporting or prosecution by Plaintiff or any third-party of a proceeding or Claim against Defendant." Dkt. No. 30, Ex. 1, at 3. Pursuant to the non-disparagement provision, Plaintiff would agree not to "publish or communicate to any person any Disparaging remarks, comments or statements concerning Defendant." Dkt. No. 30, Ex. 1, at 4. This includes any written or oral communications that "reflect adversely on the business affairs or practices," or "impugn the character, honesty, integrity, morality, business acumen or abilities in connection with any aspect of the operation of business." Dkt. No. 30, Ex. 1, at 4.

## LEGAL STANDARD

Employers who violate the overtime wages requirements of the FLSA are required to compensate employees for their "unpaid overtime compensation and 'an additional equal amount as liquidated damages.'" *Elliott v. Allstate Investigations, Inc.*, 2008 WL 728648, at *1 (S.D.N.Y. Mar. 19, 2008) (quoting 29 U.S.C. § 216(b)). Employees may, however, "waive FLSA claims pursuant to judicially-supervised settlements." *Id.*; *see also D.A. Schulte, Inc. v. Gangi*, 328 U.S. 108, 114 (1946). To protect employees from the "inequality in bargaining powers" attending such negotiations, district courts must scrutinize FLSA agreements to ensure that they reflect a reasonable and fair compromise of disputed issues, "rather than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012); *see also Cheeks v. Freeport Pancake House Inc.*, 796 F.3d 199, 206 (2d Cir. 2015). Because the court's examination is "an information intensive undertaking," *Lopez*, 96 F. Supp. 3d at 176, the parties must provide sufficient information to allow the court to "examine the bona fides of the dispute." *Wolinsky*, 900 F. Supp. 2d at 335 (quoting *Dees v. Hydradray, Inc.*, 706 F. Supp. 2d 1227, 1241 (M.D. Fla. 2010)).

When reviewing an FLSA settlement for fairness and reasonableness, district courts must consider the totality of circumstances. *Wolinsky*, 900 F. Supp. 2d at 335. This includes review of "(1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion." *Id.* (internal quotation marks omitted) (quoting *Medley v. Am. Cancer Soc.*, No. 10 cv 3214 (BSJ), 2010 WL 3000028, at *1 (S.D.N.Y. July 23, 1010)). Courts

should also consider whether, in light of the FLSA's purposes, factors exist that weigh against approving a proposed settlement. *Id.* at 336. These include "(1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA non-compliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace. *Id.* (internal quotation marks omitted) (quoting *Dees*, 706 F. Supp. 2d at 1244).

## DISCUSSION

The parties submit that while "materially less than the judgment amount, the settlement sum represents a fair compromise of disputed claims and avoids significant litigation and collection risk." Dkt. No. 30, at 3. The court agrees that in light of the litigation risks the parties identify, the significant difference between the judgment amount ($133,700) and the settlement sum ($10,000) is not necessarily fatal to the proposed agreement. The now-vacated default judgment represents Plaintiff's highest estimation, not the fully litigated merit of this claim. Defendant "vigorously disputes the claim in its entirety, including whether defendant was plaintiff's employer, the hours he claimed to have worked and the amounts he claims he was paid." Dkt. No. 30, at 2. Defendant contends that Plaintiff is wholly ineligible to recover on his state law claims because the New York Labor Law exempts persons who render "physical services in connection with the maintenance, care or operation of a residential building." 12 N.Y. Comp. Codes R. & Regs. tit. 12, § 141-3.4. Plaintiff has thus agreed to the settlement sum of $10,000, which reflects these risks while avoiding the burden and expense of establishing the corresponding claims and defenses. Dkt. No. 30, at 3.

The court is also satisfied that the settlement was the product of arm's-length bargaining. Dkt. No. 30, at 4. The record makes clear that Plaintiff has been zealously represented by Eugene G. Eisner & Associates, who, prior to Defendant's appearance in this matter, had secured a default judgment against Bluestar. Dkt. No. 27. Indeed, as the parties indicate in their letter, Plaintiff's counsel has had many years of experience representing plaintiffs in these and similar actions. Dkt. No. 30, at 4. Defendants, for their part, are represented by Arthur Robb of Clifton Budd & DeMaria, LLP, who have extensive experience defending building owners and management in FLSA and NYLL actions. Dkt. No. 30, at 4. There is also no evidence in the record to suggest fraud or collusion.

The court finds the agreement's release and non-disclosure provisions to be fair and reasonable. The release is broad insofar as it is extends beyond Plaintiff's wage-and-hour lawsuit and to all claims "Plaintiff *has or may have* against Defendant." Dkt. No. 30, Ex. 1, at 2. Crucially, however, the agreement defines "claims" as "any and all actions, charges, complaints . . . or damages arising from or relating to anything that happened *before* Plaintiff signs this Agreement." Dkt. No. 30, Ex. 1, at 2 (emphasis added). Thus, the agreement does not impermissibly purport to affect Plaintiff's ability to bring future claims.

With respect to attorney's fees, the agreement provides that one-third of the total settlement amount will be paid to plaintiffs' counsel within seven days of the court's approval of the agreement. Dkt. No. 30, Ex. 1, at 3. Attorney's fees of one-third of the net settlement amount in FLSA cases are routinely approved in this circuit. *Savino v. Visiting Nurse Service of New York*, 2017 WL 2473214, at *3 (S.D.N.Y. June 7, 2017); *see also Santos v. EL Tepeyac Butcher Shop Inc.*, 15 Civ. 814 (RA), 2015 WL 9077172, at *3 (S.D.N.Y. Dec. 15, 2015); *Febus v. Guardian*

*First Funding Grp.*, LLC, 870 F. Supp. 2d 337, 340 (S.D.N.Y. 2012). Accordingly, the court finds the attorney's fees provisions are both fair and reasonable.

Finally, the court notes the error under the Governing Law section heading, which refers to the Eastern District of New York. Dkt. No. 30, Ex. 1, at 5.

## CONCLUSION

For the reasons stated above, the court finds the FLSA agreement the parties have submitted reflects a reasonable and fair compromise of the disputed issues in this matter. The proposed settlement agreement is therefore approved.

Dated: January 17, 2018

_____
U.S.D.J.

BY ECF TO ALL COUNSEL